IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

EVELYN GRADDY,

     Plaintiff,

v.                                  CASE NO.: 5:16-CV-00009-JA-PRL

WAL-MART STORES EAST, LP,
a Foreign Limited Partnership

     Defendant.

_____/

### PLAINTIFF'S STATEMENT OF FACTS AND MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to the Local and Federal Rules of Civil Procedure, and this Court's Order regarding Summary Judgment requirements, Plaintiff, EVELYN GRADDY ("Dr. Graddy" or "Plaintiff"), responds to Defendant, WAL-MART STORES EAST, LP ("Wal-Mart" or "Defendant"), Motion for Summary Judgment ("Motion"), and states as follows:

### SUMMARY OF THE ARGUMENT

Plaintiff was fired because she filled a prescription at the direction of law enforcement and the identified Doctor's office as part of a "police sting." Defendant's policy prohibits such participation. Plaintiff's refusal to follow Defendant's policy and instead, comply with the directives of law enforcement make her a protected whistleblower; doing otherwise would have required her break to Florida law. Defendant violated the law when it fired her for these actions.

On November 20, 2014, William Christman of the Ocala Police Department ("Officer Christman") entered Wal-Mart Store 1847 in Ocala, Florida. Wal-Mart's management was aware that he had been to this Store previously on November 6, 2014, as he was conducting a "sting operation" involving a person named Karla McKey (the

"perpetrator").  Ms. McKey was engaging in pharmaceutical prescription fraud around the area.

At no point prior to November 20, 2014, did Plaintiff's Pharmacy Manager, Ashley Berry ("Ms. Berry"), or Defendant's Asset Protection Manager, David Reeve ("Mr. Reeve"), notify Plaintiff or any of the pharmacy employees of Store 1847 to be aware of this individual or the prescriptions she was trying to fill, despite Ms. Berry acknowledging that "we were on notice that previous scripts by the patient were fake and fraudulent." Further, neither Ms. Berry nor Mr. Reeve told pharmacy employees that they were not to assist Officer Christman if he returned.  ***In fact, when Officer Christman entered Store 1847 on November 20, 2014, he was escorted to the pharmacy by Mr. Reeve, and introduced to Plaintiff by Mr. Reeve with whom he was working to apprehend the perpetrator.***

Upon Officer Christman's escort to the pharmacy on November 20, 2014, Ms. Berry discussed Officer's Christman's investigation with him in Plaintiff's presence, and Ms. Berry told Plaintiff she was calling corporate compliance to discuss this issue.  Officer Christman then instructed Plaintiff to fill the perpetrator's prescription and he would arrest her upon taking control of the drugs; so, Plaintiff did so based on the assumption that Wal-Mart was working with the authorities to crack down on prescription fraud and her Pharmacy Manager and Asset Protection Manager were well aware of the ongoing "sting" operation on November 20, 2014.  She was then fired for working with the authorities in a "police sting" in violation of Wal-Mart's policies.

In the real world, common sense dictates that if Store 1847's Asset Protection Manager doesn't want you to work with law enforcement on an active "police sting,"

because it is against Walmart policy, he isn't going to escort law enforcement to where you work and introduce you to the officer and stand there while the officer instructs you to assist him in his "police sting."   In the real world, common sense dictates that if your Pharmacy Manager has already discussed the potential for a particular individual filling fake prescriptions with the same officer conducting a "police sting" in your presence and she doesn't want you working with law enforcement on that "police sting," she will tell you not to work with law enforcement and warn you of the potential for a fake prescription coming in and what to do if that happens. In the real world, common sense dictates that if your Pharmacy Manager tells you she is calling corporate compliance to notify them of police presence in the pharmacy regarding a "police sting," that if you are not to work with police, she will advise of you same.   In the real world, common sense dictates that if a police officer tells you to do something, you do it.

But, Wal-Mart doesn't live in the real world, among real people.  Rather, it lives in a world where "Wal-Mart law" reigns supreme.  And, if you don't follow "Wal-Mart law," regardless of whether it is in conflict with "real world law," you are going to lose your job. That's exactly what happened to Plaintiff here.  Plaintiff was fired for adhering to a direct instruction from law enforcement officers to assist with a "police sting" and put ongoing prescription fraud to a halt.  And, Defendant's ever changing "reason" for why Plaintiff was fired amongst its own witnesses and documents, makes clear that Plaintiff's involvement with law enforcement was the true reason for her termination.  That is illegal.

Specifically, Florida Statute, 843.06, titled Neglect or Refusal to Aid Peace Officers states as follows:

> Whoever, being required in the name of the state by any officer of the Florida Highway Patrol, **police officer**, beverage enforcement agent, or

watchman, neglects *or refuses to assist him or her in the execution of his or her office in a criminal case*, or in the preservation of the peace, *or the apprehending or securing of any person for a breach of the peace*, or in case of the rescue or escape of a person arrested upon civil process, *shall be guilty of a misdemeanor* of the second degree, punishable as provided in s. 775.082 or s. 775.083.

(emphasis added) In direct conflict with this statute, Wal-Mart's policy states that:

> *Any request or direction from law enforcement to fill a forged or altered prescription must be refused*... Filling a forged or altered prescription even at the direction of law enforcement is not permitted, and law enforcement "sting operations" or similar activities aimed at catching a suspect in the act may threaten the safety of patients and associates. *An associate who fills a forged or altered prescription, even at the direction of law enforcement, violates company policy and may be subject to disciplinary action up to and including termination*.

Walmart POM 1703 page 8 of 9 (emphasis added).

Florida's Whistleblower Statute ("FWA"), at subsections 448.102 (3), specifically provides that it is illegal for Wal-Mart to "take any retaliatory personnel action against" Plaintiff because she [o]bjected to, *or refused to participate in*, **any** activity, *policy*, or practice of [Wal-Mart] which she reasonably believes is a violation of a law, rule, or regulation." (emphasis added). A cursory comparison of Wal-Mart's policy above, prohibiting employees like Plaintiff from assisting law enforcement regarding "police stings" with Florida's statute mandating assistance to police officers makes clear that Plaintiff's conduct, in refusing to adhere to Wal-Mart's policy, falls within the direct crosshairs of subsection (3) of the FWA.

On the night of November 20, 2014, Plaintiff was faced with a choice: (a) follow Wal-Mart's policy and engage in a misdemeanor by refusing to assist law enforcement and let a felon engage in prescription fraud; or (b) do the right thing, follow the law, help catch a felon engaging in prescription fraud, and assist law enforcement. Plaintiff chose the legal and righteous path in working with the police, and it cost her a beloved job with Wal-Mart

4

and a lot more.  Doing the right thing shouldn't result in losing your livelihood.  Plaintiff's termination and Wal-Mart's policies are illegal.  Based on the record before this Court, Plaintiff is entitled to a trial to determine in the jury agrees with her position.

## STATEMENT OF MATERIAL FACTS PRECLUDING SUMMARY JUDGMENT

Plaintiff maintains a Doctorate in Pharmacy and worked for Defendant from July 30, 1988, until her termination on November 24, 2014 ("Graddy Depo" at 27:25-28:2,8-10,85:14-18, 233:11-14).[1]  Throughout her employment, Plaintiff worked a variety of positions ranging from "staff pharmacist" to "floater pharmacist," at various Wal-Mart pharmacies throughout Florida. (Graddy Depo. at 86:21- 87:18, 92:5-12) On November 20, 2014, Plaintiff was assigned to work a floater shift at Wal-Mart Store 1847 located in Ocala, Florida (Graddy Depo. at 109:22-110:9) She had only worked there 1-2 times previously. (Graddy Depo. at 110:17-10).   Prior to November 20, 2014, Plaintiff had no significant disciplinary history with Wal-Mart during her 25 plus year career, and was considered an employee in good standing with Wal-Mart. (Nation Depo. at 33:9-12).

Prior to arriving for her shift at Store 1847 on November 20, 2014, Plaintiff was familiar with Florida law stating it is a misdemeanor to refuse to assist law enforcement as part of an ongoing investigation. (Graddy Depo. at 170:15-17,178:12-19).   In the two weeks prior to Plaintiff working this shift at Store 1847, law enforcement had been investigating the perpetrator at issue for prescription fraud, and had addressed this issue with Ms. Berry on November 6, 2014. (Berry Depo. at 15:7-11, 31:5-13) (Christman Depo. at 11:5-13, 12:5-10, 13:1-14).  At no time did Ms. Berry inform any of the pharmacists

---

[1] Deposition citations are referred to in this Response by the Deponent's last name, followed by "Depo." with page and line citations.  Because Defendant filed the majority of the deposition transcripts in this matter, Plaintiff is not refiling same, and will only file those transcripts not already in evidence as part of Defendant's Motion.

working under her at Store 1847 to be aware of, or on the lookout for, the perpetrator or her fraudulent prescriptions, or that law enforcement was investigating same. (Berry Depo. at 33:18-21, 34:5-10).

During her shift on November 20, 2014, Plaintiff suspected that a prescription she was working on may be fraudulent.   (Graddy Depo at 139:1-7,142:19-23) Plaintiff immediately contacted the office of Dr. James Rogers ("Doctor's office") to verify and/or determine whether the prescription was legitimate.   She spoke with Carey Robinson, the Doctor's Office Manager ("Ms. Robinson"). (Graddy Depo. at 139:1-4, 142:19-23) (Robinson Depo at 12:14-19) After some research and discovery, the Doctor's office notified Plaintiff that the prescription she discovered was fake, and that the Doctor's office was working with law enforcement at that time.   (Graddy Depo. at 146:3-20,148:20-23) (Robinson Depo at 19:1-10, 21:10-15). Plaintiff then cancelled the prescription in Defendant's computer system. (Graddy Depo. at 164:16-18). Ms. Robinson instructed Plaintiff that because the Doctor's office was working with law enforcement, that Dr. Rogers had now authorized Plaintiff to fill the prescription, because law enforcement was headed to Wal-Mart to apprehend the suspect who was trying to fill the fraudulent prescription. (Graddy Depo. at 148:20-23, 162:15-163:25) (Robinson Depo at 21:10-15). Specifically, Ms. Robinson told Plaintiff "she needed to fill the prescription in order for the person to come pick it up so the police could apprehend them." (Robinson Depo at 21:10-15).  Ms. Robinson also told Plaintiff that she was to fill the prescription based on what the police officer told her.  (Robinson Depo at 30:23-25) She never told Plaintiff that the police said her participation was voluntary. (Robinson Depo at 31:1-5).  The Doctor's office was under the understanding that they "were only agreeing to fill the prescription for

the person to pick it up, and for the police to apprehend them as they were picking up the prescription." (Robinson Depo at 31:22-32:5).   The prescription was not being filled for the perpetrator to actually consume the medication, and the belief was that the ultimate person who would possess the medication would be the police.  (Robinson Depo. at 32:6-14).  The Doctor's office would not have authorized the prescription if they had any doubt that the police officers would not be the "end possessor" of the prescription.  (Robinson Depo at 32:15-21).

Officer Christman from the Ocala Police Department arrived at Store 1847 on November 20, 2014, in response to the call from the Doctor's office.  (Christman Depo. at 4:13-14, 18:15-23, 19:19-22).   He was escorted to the Pharmacy by Mr. Reeve (Graddy Depo. at 153:13-18).[2] Officer Christman introduced himself to Plaintiff, displayed his badge and credentials, and explained to her that he was an Ocala Police Officer and was conducting a "police sting" operation that she was to participate in. (Graddy Depo. at 153:13-22, 156:23-157:20) (Christman Depo. at 21:5-25) (Reeve Depo at 13:1-12) At no time did Officer Christman tell Plaintiff that her participation in his "police sting" was voluntary.  (Christman Depo. at 54:9-14) Plaintiff did not believe that she could refuse Officer Christman's instruction to assist him with the "police sting." (Graddy Depo. at 170:10-18).

Also present in the Pharmacy at that time Officer Christman arrived was a Pharmacist named "Elias," and Ms. Berry, who spoke with Officer Christman regarding his investigation (Graddy Depo. at 156:5-7).   Although Ms. Berry was not scheduled to work at Store 1847 on November 20, 2014, she was present in the pharmacy on that date

---

[2] Mr. Reeve has the same authority as a Wal-Mart Assistant Store Manager and is right under the Store Manager.  He is considered to be a member of Wal-Mart's management team. (Reeve Depo. at 31:24-32:1)

for a short period of time. (Graddy Depo. at 128:11-20).  In Plaintiff's presence, Officer Christman discussed his investigation with Ms. Berry, and Ms. Berry told Plaintiff that ***she was going*** to contact Wal-Mart's regulatory affairs department to address Officer Christman's investigation while in the Store. (Graddy Depo. at 150:17-151:3, 228:9-22). Plaintiff, therefore, did not contact compliance, as Defendant requires, as she assumed that Ms. Berry, her "Direct Manager," had done as she said she would. (Graddy Depo. at 150:17-151:3, 228:9-22).  Officer Christman was in Store 1847 for 4-5 hours waiting for the perpetrator to arrive to fill the prescription. (Christman Depo. at 67:3-9).  At no time during this 4-5 hour period, did anybody from Defendant instruct Plaintiff that she was not to work with law enforcement, or was not required to comply with Officer Christman's instructions.  (Graddy Depo. at 175:18-176:5, 227:5-15)(Reeve Depo. at 16:14-25, 17:1-19)[3]  To the contrary, Officer Christman told Plaintiff that he was going to be working with Mr. Reeve in his efforts to apprehend the perpetrator. (Graddy Depo. at 183:10-15). Plaintiff reasonably assumed, therefore, that she was authorized to cooperate with Officer Christman and his investigation. (Graddy Depo. at 175:18-176:5).

Officer Christman specifically told Plaintiff that "I need you to fill the prescription and sell it to her and we will arrest her." (Graddy Depo. at 158:20-25).  He did so in the presence of Mr. Reeve.   (Graddy Depo. at 183:10-19, 226:3-227:15).  Despite this instruction, Plaintiff, aware of her obligations, raised her concern to Officer Christman that she felt uncomfortable filling the prescription because she was aware it was not legitimate. (Graddy Depo. at 158:20-159:10).  Officer Christman, however, assured Plaintiff that upon the completion of the transaction, and the perpetrator taking the bag containing the

---

[3] Mr. Reeve has the authority to tell law enforcement that he doesn't want them exercising a sting operation in his Store. (Reeve Depo. at  42:18-43:11)

prescription, that he would arrest her, and that she would never have the chance to consume the drugs.  (Graddy Depo. at 159:1-6)(Christman 58:24-59:3).  Because Plaintiff was familiar with Florida law and the definition of "dispense" regarding pharmaceuticals which requires drugs to be given to the end consumer to be "dispensed," Plaintiff reasonably believed that she was not violating Florida law by assisting law enforcement, because the perpetrator would not be the ultimate consumer of the prescription; rather, the ultimate consumer was law enforcement. (Graddy Depo. at 160:13-161:8, 166:6-11). Officer Christman agreed that filling a prescription in this manner was not illegal as it was being done at the direction of law enforcement (Christman Depo at 25:7-25-26:2)

Faced with the choice of refusing Officer Christman's instructions and violating the law, or refusing to follow Wal-Mart's policy, Plaintiff complied with Officer Christman's instructions. (Graddy Depo. at 169:3-11, 230:5-13).  To that end, she, along with other pharmacy employees filled, bagged, and then ultimately sold the prescription to the perpetrator when she arrived at Store 1847 toward the end of the evening. Specifically, Sarah Page, a Pharmacy Technician ("Ms. Page"), bagged the prescription and scanned it in the system, despite knowing that the prescription was fraudulent, because she knew Plaintiff was working with the police.  (Page Depo. at 16:11-17).  When the perpetrator arrived at the pharmacy, Jasmine Wise, a Pharmacy Technician ("Ms. Wise"), was the person who sold the prescription to the perpetrator, even though she knew the prescription was not legitimate because she knew Plaintiff was working with the police.  (Wise Depo. at 16:19-17:2, 19:3-9), attached as ***Exhibit A***.  Upon paying for the drugs, the perpetrator turned and attempted to leave, but was immediately apprehended by Officer Christman, the prescription was confiscated by Officer Christman, and the perpetrator was arrested.

(Graddy Depo at 171:7-22, 182:23-24, 183:1-19) (Christman Depo at 38:11-25). This occurred right outside the front door which is right next to the Pharmacy.  (Christman Depo at 20:20-22).

Shortly after November 20, 2014, Plaintiff was asked for a written statement regarding her involvement in the "police sting," which she provided to her Market Health and Wellness Director, Guy Peshek ("Mr. Peshek") (Peshek Depo. at  9:1-9). After submitting this written statement, Plaintiff was never interviewed, and nobody ever asked her any follow up questions about what occurred at Store 1847 on November 20, 2014. (Graddy Depo. at 231:21-25).  Neither Officer Christman nor anybody from the Doctor's office were ever contacted or interviewed. (Peshek Depo. at 27:20-28:3) (Pabon Depo. at 9:6-24).

Plaintiff reported to work as scheduled on November 24, 2014.  (Graddy Depo. at 212:18-20, 233:1-14).  Upon arrival for her shift, Plaintiff was called into an office by Tony Nation, Plaintiff's Market Manager ("Mr. Nation"). (Graddy Depo. at 212:18-20)   Upon being called into this meeting, Mr. Nation began to reprimand Plaintiff for working with Officer Christman, and told that she should not have worked with police on November 20, 2014. (Graddy Depo. at 188:22-189:15, 194:7-20, 196:5-8, 202:21-203:23).   In response to these comments from Mr. Nation, Plaintiff advised that she believed it was illegal for Wal-Mart to enforce a policy that would reprimand/discipline her for working with law enforcement as Florida law requires. (Graddy Depo at 232:2-7).

Mr. Nation, in response to Plaintiff's objections, notified Plaintiff that the Regional Human Resources Manager, Jamie Miller ("Mr. Miller"), had instructed him to terminate her employment, based on her cooperation with law enforcement. (Graddy Depo. at 196:5-

7). When Plaintiff again objected that this discipline violated Florida law, Mr. Nation told Plaintiff that he would reflect the reason for her termination to be that Plaintiff filled a fraudulent prescription. (Graddy Depo. at 194:7-195:4).   Plaintiff refused to sign documentation presented to her by Mr. Nation, as she advised that the termination was untrue.  (Graddy Depo. at 194:7-195:4).   Mr. Miller confirmed during his deposition, that Plaintiff was terminated for assisting law enforcement as part of a "sting operation." (Miller Depo. at 13:18-14:23, 24:11-19, 26:9-13) Despite the fact that the policy on which Defendant now relies for Plaintiff's termination states it applies to "all pharmacy associates," (which includes technicians and cashiers) no other employees, even those who admitted they violated the policy on November 20, 2014 (Ms. Page and Ms. Wise-technicians), were terminated or disciplined as a result of their participation in the events of November 20, 2014, at Store 1847. (Miller Depo. at 18:14-25, 19:19-23) (Wise Depo. at 20:6-9;19-24)(Page Depo. at 19:14-17).

Plaintiff maintains that she was fired as a result of her refusal to follow Wal-Mart's policy which prohibits her from working with law enforcement to fill a prescription as part of a "sting operation." *See* Amended Complaint (DE 18) at ¶¶14-17.  Plaintiff maintains that Wal-Mart's policy in this regard, directly conflicts with Florida Statute, 843.06, which requires Plaintiff to assist law enforcement with the execution of their duties. *See id.* According to Defendant, the most accurate explanation of Plaintiff's reason for termination should be the Wal-Mart Exit Interview Form.  (Miller Depo. at 7:8-11, 10:19-23)( Peshek Depo at 16:11-20, 18:8-25, 19:9-12, 20:18-24).

In this litigation, Wal-Mart claims that Plaintiff was fired for violation of the above referenced ***POM 1703*** and more specifically, because she filled a fraudulent prescription.

(Peshek Depo. at 15:6-11, 16:11-16)(Pabon Depo. at 10:11-16)  Yet, on its Exit Interview

Form, Wal-Mart states Plaintiff was terminated because "[a]ssociate violated the ***POM 903***

for filling an rx that was not written by the DR." (emphasis added) (Pabon Depo. at 14:7-

10, 18:13-25, 19:1-22); *See* Plaintiff's Exit Interview Form attached as ***Exhibit B***.

Nowhere on the Exit Interview Form is ***POM 1703*** referenced. (Pabon Depo. at 18:21-25)

And, Defendant's Regional HR Manager, Jaime Miller, testified that the real reason

Plaintiff was fired, was not because she filled a fraudulent prescription, but because

Plaintiff assisted police with a "sting operation." (Miller Depo. at 14:20-23).

### MEMORANDUM OF LAW

**A. Plaintiff Establishes a *Prima Facie* Case That Defendant Violated
Florida's Private Whistleblower Statute.**

Plaintiff's claims are premised upon Defendant's illegal termination of her

employment in violation of the FWA.  Plaintiff is proceeding under subsection (3) of the

FWA based on her refusal to participate in Wal-Mart's policy that expressly prohibits civic

minded employees like her from assisting police officers as part of a "sting operation" to

crack down on prescription fraud at Wal-Mart. *See* Amended Complaint (DE 18) at ¶¶14-

17.  Plaintiff maintains that Defendant's policy in this regard, is in direct conflict with

Florida Statute 843.06, cited above and presented her with the Hobson's choice of violating

Florida law, or Wal-Mart policy.

To establish a *prima facie* case of retaliation under the FWA, Plaintiff must prove

that: (1) she engaged in statutorily protected expression; (2) she suffered an adverse

employment action; and (3) the adverse employment action was causally linked to the

statutorily protected activity. *See Sierminski v. Transouth Fin. Corp*., 216 F.3d 945, 950

(11th Cir.2000).  Upon such a showing, the burden shifts to Defendant to put forth a

legitimate reason for the adverse employment action. From there, this Court then examines whether the stated reason is pretext. *See id.*

In its Motion, Defendant has cleverly attempted to reframe the issues in this case to make it about whether Defendant's policy is an actual violation of the law.  However, that inquiry, based on FWA jurisprudence is irrelevant.  This is because this district adheres to the binding authority of *Aery v. Wallace Lincoln-Mercury, LLC,* 118 So. 3d 904, 916 (Fla 4th DCA 2013), and holds that an employee only requires" a good faith, reasonable belief" that the employers actions violated the law. *See Burns v. Medtronic, Inc.,* 2016 WL 3769369 (M.D. Fla. July 12, 2016)(Kovachevich, J.)("[A]s the Middle District of Florida has already established, *Aery* remains the controlling law on the issue  . . .").  Here, it is undisputed that Plaintiff had a good faith reasonable belief that Wal-Mart's policy violated Section 843.06, Florida Statutes.  She was fired her refusal to follow that policy.

**1.  Plaintiff Engaged in Protected Activity By Refusing to Follow POM 1703's Prohibition on Assisting Law Enforcement With Sting Operations Because it <u>Violated Florida Law</u>.**

It is undisputed that, at the time she assisted Officer Christman with his "police sting" on November 20, 2014, Plaintiff reasonably believed that Defendant's POM 1703 prohibiting such assistance violated Florida law.  In that regard, Plaintiff was introduced to Officer Christman of the Ocala Police Department on November 20, 2014, by Mr. Reeve, and was instructed by Officer Christman in Mr. Reeve's presence as follows:

- He was conducting an active investigation of a potential perpetrator involved in prescription fraud;
- That Plaintiff was to fill the prescription that the perpetrator would be attempting to fill later that day at the store; and
- He would not allow the perpetrator to leave the store with the prescription as he intended to apprehend her once the transaction was complete, and she would not have the opportunity to consume the pharmaceuticals.

Based on this, Plaintiff understood Officer Christman's instructions to be a directive from law enforcement, and that she had no choice but to comply, or she would be violating the law and engaging in a misdemeanor.  Plaintiff complied with Officer Christman's instructions, and the perpetrator was apprehended on site and prosecuted. Plaintiff's actions in this regard directly conflict with Wal-Mart's POM 1703 which states that "[a]n associate who fills a forged or altered prescription, ***even at the direction of law enforcement***, violates company policy and may be subject to disciplinary action up to and including termination." Plaintiff's refusal to adhere to this policy based on Section 843.06, Florida Statute, brings her squarely within the "protected expression" prong of the FWA. *See id.* ("Whoever, being required in the name of the state by any . . . police officer, neglects or refuses to assist him or her in the execution of his or her office . . . in the preservation of the peace, or the apprehending or securing of any person for a breach of the peace . . . shall be guilty of a misdemeanor of the second degree, punishable as provided in s. 775.082 or s. 775.083.").

### 2. Plaintiff Was Fired Just Days After Her Refusal to Follow Defendant's Illegal Policy and Defendant Admits This is Why She Was Fired.

As discussed in detail below regarding pretext, Defendant's "pre-suit" written reason for Plaintiff's termination is inconsistent with its stated reason in this litigation. However, it is undisputed that Plaintiff was fired as a result of her actions on November 20, 2014, involving the "police sting" with Officer Christman.  The timing of Plaintiff's termination in relation to her protected expression was four (4) days.[4]  This, of course, establishes an immediate temporal nexus between the two events thereby demonstrating

---

[4] Defendant's records state that Plaintiff was terminated on January 1, 2015, but she was notified of her termination on November 24, 2014, and never worked for Wal-Mart again. (Graddy Depo. at 212:18-20, 233:6-8).

the causal link between the two activities.  *See Clover v. Total Sys. Servs., Inc*., 176 F.3d 1346, 1354 (11th Cir.1999) (To establish the requisite causal connection, the employee "need only show that the protected activity and the adverse action were not wholly unrelated."); *Brungart v. BellSouth Telecommunications, Inc.,* 231 F.3d 791, 799 (11th Cir.2000)(An employee meets her burden on causation by demonstrating "close temporal proximity" between the protected activity and the adverse employment action.).

### B.  Defendant's Reason for Termination is Not Legitimate.

Despite its own termination documents to the contrary, and the fact that Defendant's own Regional HR Manager testified that the reason for Plaintiff's firing was because she assisted police with a "sting" operation involving prescription fraud, Defendant has settled, at least for now, on the position that Plaintiff was terminated for filling a fraudulent prescription in violation of POM 1703.  But, even Defendant's contention in this regard, when the applicable laws and regulations are evaluated, demonstrate that this position is equally flawed.  This is because Plaintiff never "dispensed" an illegal prescription as the term is defined by Florida law.  Had Defendant interviewed Plaintiff, the Doctor's office employees, and Officer Christman before rushing to fire Plaintiff, it would have learned of same.  Instead, Defendant did nothing, other than "collect statements," and made the decision to terminate Plaintiff without actually learning of the unusual set of facts that took place on November 20, 2014.  This demonstrates the illegitimacy of its actions regarding Plaintiff.

Had Defendant interviewed Plaintiff, or the Doctor and his office staff, or Officer

Christman, it would have learned the following:

- Plaintiff *was the one* who first discovered the potentially problematic prescription at issue, and initiated the protocol to determine whether the prescription was legitimate;
- Plaintiff was the one who contacted the Doctor's office to investigate the prescription, and notified the Doctor's office that it might be illegitimate;
- The Doctor's office notified Ocala police and the phone call was transferred to Officer Christman;
- Officer Christman instructed the Doctor's office to tell Plaintiff to fill the prescription;
- The Doctor's office, under whose name the prescription was written, authorized and directed Plaintiff to fill the prescription under the Doctor's authority and with his permission.  They also notified Plaintiff that Officer Christman was headed to Wal-Mart;
- Officer Christman, upon arriving at Wal-Mart, was escorted to Plaintiff by Mr. Reeve, at which time Officer Christman instructed Plaintiff to fill and sell the prescription at issue in Mr. Reeve's presence;
- Officer Christman assured Plaintiff that the prescription was being filled for him to confiscate once the perpetrator took possession of it, and that the perpetrator would be apprehended by him and would not have the chance to consume the prescription contents;
- Plaintiff observed Ms. Berry speaking with Officer Christman regarding his sting operation in between the time Plaintiff was first introduced to Officer Christman and the time the perpetrator came in for the prescription and was apprehended;
- Ms. Berry told Plaintiff she would notify compliance so Plaintiff didn't do so;
- Officer Christman sat in front of the pharmacy for 4-5 hours waiting for the perpetrator to appear and attempt to secure the prescription;
- Plaintiff assumed that because she was introduced to Officer Christman by Mr. Reeve, had observed her Ms. Berry discuss Officer Christman's "sting" in front of her, and the fact that Officer Christman was waiting for hours in the pharmacy to catch the perpetrator, that Plaintiff had the authority to work with Officer Christman and assist him as instructed; and
- As soon as Ms.Wise, a Pharmacy Technician, sold the prescription to the perpetrator, Officer Christman arrested her, and confiscated the prescription.

These facts are relevant for one major reason.  Under the terms of Florida's Statute,

Section 893.02(7), Plaintiff did not illegally "dispense" a fraudulent prescription.  This

fact, while technical, renders Defendant's "legitimate reason for termination," illegitimate on its face.

### 1.        Plaintiff Did Not "Dispense" a Fraudulent Prescription.

Defendant seems to argue that Plaintiff's conduct in working with police and dispensing the prescription was somehow a violation of law.  Section 893.04(f), Florida Statutes, states that: "a pharmacist may not knowingly ***dispense*** a prescription that has been forged for a controlled substance listed in Schedule II, Schedule III, or Schedule IV." (emphasis added).  Pursuant to 893.02(7), Florida Statutes, "dispense means the transfer of possession of one or more doses of a medicinal drug by a pharmacist . . . to the ***ultimate consumer thereof*** or to one who represents that it is his or her intention not to consume or use the same but to transfer the same to the ultimate consumer or user ***for consumption by the ultimate consumer or user***." (emphasis added).

Based on the undisputed facts of this case, Plaintiff did not violate the above statute because she was aware, at the time she released the prescription, that the perpetrator was neither going to be the ultimate consumer, or have the ability for "consumption."  This is because both the Doctor's office and Officer Christman, assured Plaintiff that the perpetrator would immediately be apprehended and the prescription confiscated, upon the transaction of money for the bottle of pills.  And, this is exactly what happened.  While Defendant wants to claim that Plaintiff violated not only violated its policies but the law, the facts of this case belie that conclusion.  Moreover, Defendant ignores the other provisions of Chapter 893, Florida Statutes, which further clarify that she didn't do anything illegal, or improper as she was working at the direction of law enforcement.

**2. Plaintiff's Cooperation With Law Enforcement Permitted Her to Fill the Prescription and Exempted Her from Criminal Prosecution Under Florida Law.**

Section 893.13, Florida Statutes, describes the "Prohibited Acts" provisions of Florida law governing prescriptions. This statute describes all of the circumstances in which a pharmacist, like Plaintiff, could be criminally liable for a violation of law by engaging in prescription fraud or related conduct. Importantly, subsection (9) of the statute, states that the statute's penalty provision is ***not*** "applicable to the delivery to . . . persons included in any of the following classes . . . for use in the usual course of their business or profession or in the performance of their official duties: (h) **[l]*aw enforcement officers for bona fide law enforcement purposes in the course of an active criminal investigation.*"** (emphasis added) Therefore, because Plaintiff's understanding, belief, and contention, was that law enforcement was going to be the ultimate consumer/possessor of the prescription at issue (and everyone else involved (including the other Wal-Mart employees) had the same understanding), Plaintiff's conduct in furnishing the prescription was likewise protected and exempted based on the above referenced statute.

Respectfully, Plaintiff understands that the issues before this Court in this lawsuit do not require this Court to interpret whether Plaintiff's conduct was legal vs. illegal, or whether Plaintiff was justified in acting as she did. Those are functions for the jury to determine based upon the above facts and law. The only issue before this Court is whether there are genuine issues of material fact as to whether Plaintiff's termination violated the FWA. Because these are factual rather than legal determinations, Plaintiff submits that the issue of whether Defendant's reason for termination was legitimate is ripe with fact

disputes that a jury must weigh and consider.  For this reason, Defendant's Motion should be denied alone on this basis as to Defendant's articulated reason for termination.

### B.  Defendant's Contradicting Reasons for Plaintiff's Termination Combined With its Inconsistent Enforcement of Policies Demonstrates Pretext.

#### 1.  Defendant Cannot Get Its Story Straight as to Why Plaintiff Was Terminated.

In this litigation, Defendant has maintained that Plaintiff was terminated for a violation of POM 1703. One iteration of this purported violation of POM 1703 was that Plaintiff filled a fraudulent prescription.  Defendant's HR Manager, however, who was involved in the decision to terminate, testified that Plaintiff's POM 1703 arose because she assisted police with a "sting" in the store.  This is the second iteration of Defendant's purported reason for Plaintiff's termination.

While Defendant's own decision makers cannot seem to get their story straight as to the reason why Plaintiff was actually fired, they do agree on one thing- Defendant's written documentation as to the reason for Plaintiff's termination should be the most accurate description of why she was fired. (Miller Depo. at 7:8-11, 10:19-23)(Peshek Depo at 16:11-20, 18:8-25, 19:9-12, 20:18-24).  But, Wal-Mart's termination document, titled the Exit Interview Form, doesn't mention POM 1703, or doesn't mention the filling of a fraudulent prescription.  (Pabon Depo at 18:13-19:22) This is inconsistent with Defendant's legal position in this case as to the reason for Plaintiff's termination (Pabon Depo at 19:23-20:2).

Prior to this litigation and at the time of her termination, Plaintiff was presented with Defendant's Exit Interview Form to sign.  Plaintiff was told during her termination meeting that she was being fired for participating with police as part of a "sting operation."

Defendant's reason for termination, as stated on its Exit Interview Form, is as follows: "Associate violated the POM 903 for filling an rx that was not written by the DR." *See id.* Nowhere in this document is **POM 1703** referenced, nor is there a statement that Plaintiff filled a fraudulent prescription. (Pabon Depo at 18:13-25, 19:1-22)  What is particularly troubling about this document, is that prior to terminating Plaintiff, Defendant collected statements from employees, had multiple management meetings with the Regional Director, Health and Wellness Director, and Regional HR Director.   Yet, the policy Defendant maintains Plaintiff violated and the reason why she was terminated is not listed on the only document memorializing why Plaintiff was terminated.  This is very definition of pretext in the Eleventh Circuit.  *See Springer v. Convergys Customer Mgmt. Grp., Inc.,* 509 F.3d 1344, 1348 (11th Cir.2007)(pretext is demonstrated by "such weaknesses, implausibility's, inconsistencies, incoherencies or contradictions in [the employer's] proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence.")

### 2.  Defendant's Inconsistent Application of its Policies Demonstrates Pretext.

As further evidence of pretext, Defendant's inconsistent application of its policies demonstrates that Plaintiff was singled out by Defendant.  The only difference between Plaintiff, and the other employees who assisted in the November 20, 2014, transaction, was that Plaintiff was the one directly working with police.

Plaintiff assumes, *arguendo* for a moment, that Defendant's proffered reliance on POM 1703 is the actual reason for Plaintiff's termination.  As stated above, Defendant's management testified, albeit inconsistently, that Plaintiff was fired, according to one set of managers for "filling a fraudulent prescription," and for assisting Officer Christman with

his fraudulent prescription "police sting" according to Defendant's Regional HR Manager. Both of these "infractions" are covered by POM 1703.

According to POM 1703, it applies to "**all pharmacy associates** of Wal-Mart Stores, Inc..." (emphasis added)(Miller Depo. at 18:20-25)  This is important because, on the night of November 20, 2014, multiple pharmacy associates at Store1847 were involved in handling the prescription at issue, including a Pharmacy Technician named Sarah Page, who admitted to filling the prescription and bagging it, and Ms. Wise, another Pharmacy Technician who admitted to selling it to the perpetrator at the center of the "police sting" that evening.  Both admit they knew the prescription was fraudulent when they participated. Despite this, Defendant admits that no person, other than Plaintiff, was disciplined as a result of the police sting that occurred that evening at Defendant's store.

Plaintiff respectfully submits that this inconsistent treatment of her and these Pharmacy Technicians, is based on one distinguishing criteria- Plaintiff directly assisted Officer Christman with his "sting" operation, and the others didn't.   This further demonstrates the existence of pretext regarding Plaintiff's termination.  *See Berg v. Fla. Dep't of Labor and Employment Sec., Div. of Vocational Rehab.,* 163 F.3d 1251, 1255 (11th Cir.1998) (failure to adhere to or inconsistent application of policies may be circumstantial evidence of discrimination); *Thomas v. Dade County Public Health Trust*, 177 F.Supp.2d 1283, 1292 (S.D.Fla.2001) ("The inconsistent application of an employer's policies can be circumstantial evidence of discrimination").

## CONCLUSION

Plaintiff refused to adhere to Wal-Mart's POM 1703 because she reasonably believed doing so would violate the law.  She also reasonably believed that filling the

prescription at issue was not illegal based on what she was told by the Doctor's office and law enforcement as it relates to Florida's definition of "dispense" and "ultimate consumer." There are sufficient factual disputes for the jury to determine whether Defendant violated the law.  Plaintiff was faced with following the law or Wal-Mart's mandates.  She made the decision most citizens would make and she got fired for it.  This is illegal.  For the above reasons, Plaintiff respectfully requests that this Court deny Defendant's Motion, and permit Plaintiff to have her day in Court.  Justice requires that.

Dated this 15th day of December, 2016.

/s/Richard Celler
Richard Celler, Esq.
Florida Bar No.: 0173370
Richard Celler Legal, P.A
7450 Griffin Road, Suite 230
Davie, FL 33314
Telephone: (866) 344-9243
Facsimile: (954) 337-2771
Email: Richard@floridaovertimelawyer.com

## CERTIFICATE OF SERVICE

I HEREBY certify that a true and correct copy of the foregoing was filed and served this 15th day of December 2016, using the CM/ECF system, which shall send a true and correct copy of same to all counsel of record.

/s/Richard Celler
Richard Celler, Esq.