UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

CASE NO. 5:16-CV-00009-JA-PRL

EVELYN GRADDY,

    Plaintiff,

vs.

WAL-MART STORES EAST, LP,

    Defendant.

_____/

**DEFENDANT WAL-MART STORES EAST, LP'S REPLY IN
SUPPORT OF MOTION FOR FINAL SUMMARY JUDGMENT**

Defendant, Wal-Mart Stores East, LP ("Walmart"), submits this reply in support of its motion for final summary judgment (the "Motion").

**I.  PLAINTIFF'S FAILURE TO COMPLY WITH WALMART POLICY DID NOT CONSTITUTE STATUTORILY PROTECTED ACTIVITY.**

Plaintiff contends that Walmart discharged her because she "refused to participate" in the Company's policy known as POM 1703. According to Plaintiff, POM 1703 is unlawful because, by prohibiting pharmacists from dispensing fraudulent prescriptions as part of police "sting operations," the policy requires pharmacists to violate Florida's obstruction-of-justice statute. That statute provides that it is a misdemeanor to neglect or refuse to assist a law enforcement officer in the performance of his or her duties. FLA. STAT. § 843.06. Plaintiff's position is untenable for several reasons.

Plaintiff's contention that Walmart's policy is unlawful is belied by the undisputed record evidence. As discussed in Walmart's Motion, Agent Christman's deposition testimony makes clear that Plaintiff could have assisted him without running afoul of Walmart's policy, and he

would not have considered her refusal to fill the fraudulent prescription to constitute a violation of section 843.06. In her opposition, Plaintiff completely ignores Christman's testimony, and she cites no authority whatsoever to support her position.

Apparently recognizing that POM 1703 is not in fact unlawful, Plaintiff argues that it was reasonable for her to believe that it is. Plaintiff's position is both factually and legally incorrect. From a factual standpoint, it would be unreasonable to believe the policy is unlawful. The policy's plain language reflects that it does not prohibit pharmacists from assisting law enforcement officers in performing their duties; it only forbids the filling of fraudulent prescriptions, including as part of police "sting operations." Had Plaintiff taken the ample time available to her to review the policy, or contacted Regulatory Affairs as the policy required, she would have confirmed that the policy is in fact lawful.

Nor can Plaintiff sustain her claim based on her alleged "good-faith belief" that the policy is unlawful. As discussed in Walmart's Motion, courts construing the Florida Whistleblower Act have held that the Act only protects individuals against retaliation for refusing to participate in an ***actual*** violation of law; a mere suspected violation is insufficient. *See* Def.'s Mot. for Final Summ. J. at 11-12. In her opposition, Plaintiff makes no effort to demonstrate otherwise. She simply cites *Burns v. Medtronic,* an unpublished decision of another Middle District judge, which she says stands for the proposition that "this district adheres to the binding authority of *Aery v. Wallace Lincoln-Mercury.*" Pl.'s Opp'n at 13. As this Court no doubt is aware, however, "[a] district court is not bound by another district court's decision, or even an opinion by another judge in the same district court." *Fox v. Acadia State Bank*, 937 F.2d 1566, 1570 (11th Cir. 1991). Thus, this Court need not follow the decision of any other judge in the Middle District. To the contrary, this Court is free to – and should – follow the well-reasoned

decision in *White v. Purdue Pharma*, as adopted by the Florida intermediate appellate court in *Kearns v. Farmer Acquisition Co.*, rather than the earlier, conclusory *Aery* opinion.

Plaintiff's contention that her failure to comply with POM 1703 constituted a "refusal to participate" in the policy also misses the mark. As discussed in Walmart's Motion, there is a significant difference between failing and refusing to do something. Here, it is undisputed that Plaintiff did not in any way manifest an unwillingness to comply with the policy – by, for example, telling a member of management that she would not comply. Rather, she simply failed to do so. Again, Plaintiff's opposition ignores the distinction between failing and refusing to comply, and she cites no authority to support her position that her failure constituted a "refusal to participate" in the policy.

Moreover, Plaintiff's own assertions evidence that she did not refuse to participate in POM 1703. In particular, Plaintiff asserts in her opposition that she believed she had Walmart's imprimatur to fill the fraudulent prescription. Although Plaintiff mischaracterizes the evidence in order to support this assertion, even if supported, her assertion undermines her position.

Plaintiff contends that she filled the fraudulent prescription "based on the assumption that Wal-Mart was working with the authorities to crack down on prescription fraud and her Pharmacy Manager and Asset Protection were well aware of the ongoing 'sting' operation." Pl.'s Opp'n at 2. This contention is based in part on the fact that "law enforcement had been investigating the perpetrator at issue for prescription fraud, and had addressed this issue with [Pharmacy Manager Ashley] Berry on November 6, 2014." Pl.'s Opp'n at 5. However, Plaintiff was not aware of this fact when she filled the fraudulent prescription on November 20, 2014, so she could not have been influenced by that fact.

Plaintiff also contends that she assumed Walmart "was working with the authorities"

3

because, according to Plaintiff, Agent Christman was accompanied to the pharmacy by a member of the Store's Asset Protection team, who did not tell Plaintiff not to fill the fraudulent prescription. Plaintiff's contention ignores the undisputed testimony of Asset Protection Manager David Reeve that Asset Protection personnel have no jurisdiction over the pharmacy and therefore were not in a position to give Plaintiff any direction in the matter. Reeve Dep. at 16:12-25. Moreover, Plaintiff and Agent Christman both testified that Plaintiff was out on lunch break when he arrived at the pharmacy. Pl. Dep. at 149:21-150:8; Christman Dep. at 67:10-17. Consequently, Plaintiff could not know whether he was accompanied when he arrived at the pharmacy.

Furthermore, Plaintiff testified in her deposition that the "head of security" arrived in the pharmacy and spoke with Agent Christman sometime when "all this was going on," Pl. Dep. at 153:13-18, and that Agent Christman then told her that the "security supervisor" wanted the perpetrator arrested for shoplifting, Pl. Dep. at 183:10-15. This testimony is consistent with Plaintiff's written statement reflecting that Asset Protection was involved because the perpetrator was shoplifting in the store. Pl. Dep. Ex. 5. In other words, Asset Protection only became involved once the perpetrator was in the store, i.e., several hours after Agent Christman had arrived.

Nevertheless, even if the evidence supported Plaintiff's contention that she believed she had Walmart's blessing to fill the fraudulent prescription, that contention undermines her position. If Plaintiff thought she was acting with Walmart's consent, then she necessarily thought the Company wanted her to ignore POM 1703's prohibition against participating in police "sting operations." Thus, rather than "refusing to participate" in the policy because she thought it was unlawful, she was acting in accordance with Walmart's (implicit) direction to

ignore it.

In sum, the undisputed evidence shows that Plaintiff did not engage in statutorily protected activity. POM 1703 is not unlawful, and Plaintiff could not have had an objectively reasonable belief that it is. Additionally, her failure to comply with POM 1703 did not constitute a "refusal to participate" in the policy. Accordingly, she cannot establish a *prima facie* case.

## II. WALMART HAD A LEGITIMATE REASON FOR DISCHARGING PLAINTIFF.

Contrary to Plaintiff's assertion, Walmart had a legitimate reason for discharging her: she violated POM 1703. In her opposition, Plaintiff asserts that Walmart's proffered reason for discharging her is illegitimate because she did not "dispense" the medication, as that term is defined by statute. According to Plaintiff, she was not prohibited from filling the fraudulent prescription because she knew that the police were going to arrest the perpetrator so she would be unable to consume the medication. Plaintiff's position overlooks or ignores that POM 1703 prohibits the very conduct in which she engaged: filling a fraudulent prescription at the direction of law enforcement. Thus, whether Plaintiff believed the perpetrator was going to consume the medication is irrelevant.

Additionally, as discussed in Walmart's Motion, Florida Statutes section 893.13(9)(h) provides a "safe harbor" *only if* the controlled substance is delivered to a law enforcement officer or his agent, and "for medical or scientific use or purpose only." Neither of those conditions was met here. Quite simply, the statute does *not* permit delivery of a controlled substance to a person who is not a law enforcement officer or an agent of a law enforcement officer. Under no set of facts could Ms. McKey (the perpetrator) be considered an agent of the Ocala Police Department. As such, the statute does not apply.

### III. WALMART'S PROFFERED REASON FOR DISCHARGING PLAINTIFF HAS NOT CHANGED.

Plaintiff disingenuously asserts in her opposition that Walmart's proffered reason for discharging her is pretext because the Company has given "contradicting reasons" for the discharge decision.[1] But the undisputed evidence shows – and Plaintiff readily admits – that she violated POM 1703 by knowingly filling a fraudulent prescription as part of a police "sting operation." Nevertheless, Plaintiff asserts that Walmart has given shifting reasons for the termination decision, because different individuals involved in the termination decision emphasized either Plaintiff's filling of the prescription or her participating in a police "sting." Contrary to Plaintiff's assertion, however, there is nothing inconsistent about different people emphasizing different aspects of her policy violation. Moreover, either aspect of Plaintiff's policy violation was sufficient to warrant her discharge. As such, Plaintiff cannot show that Walmart's proffered reason is pretextual. *See Tidwell v. Carter Prods.*, 135 F.3d 1422, 1428 (11th Cir. 1998) ("[T]he existence of a possible additional non-discriminatory basis for [an employee's] termination does not, however, prove pretext."); *Zaben v. Air Prods. & Chems., Inc.*, 129 F.3d 1453, 1458 (11th Cir. 1997) ("Although the company gave differing explanations for the selection of employees to be discharged, . . . its reasons are not . . . necessarily inconsistent.").

Additionally, as discussed in Walmart's Motion, Plaintiff's supervisor Tony Nation was not involved in the termination decision but rather was tasked with conveying the decision to

---

[1] Plaintiff also asserts that Walmart's proffered reason is pretextual because it did not discipline any of the other employees who were involved in filling the fraudulent prescription. However, none of the other individuals involved were pharmacists, like Plaintiff; rather, they were Pharmacy Technicians, who were subordinate to Plaintiff and acting at her direction. Pl. Dep. at 175:11-17. Because they held a different position than Plaintiff, they were not "similarly situated" to her and thus are not appropriate comparators. *See, e.g., Telfair v. Fed. Express Corp.*, 934 F. Supp. 2d 1368, 1379 (S.D. Fla. 2013) (finding individual who worked as afternoon couriers were not similarly situated to plaintiffs, who worked as morning couriers, "a material distinction which eliminates the evidentiary utility of these persons as comparators"), *aff'd*, 567 F. App'x 681 (11th Cir. 2014).

Plaintiff. In her opposition, Plaintiff ignores Nation's testimony that he inadvertently identified the wrong POM when he prepared the termination paperwork.[2] Plaintiff has no evidence refuting Nation's testimony. And, in any event, it is undisputed that Nation verbally advised Plaintiff that she was being terminated because she violated Walmart policy by filling a fraudulent prescription. Nation Dep. at 29:24-30:25; Pl. Dep. at 194:5-195:4. As such, Nation's mistake in preparing the termination paperwork is not evidence of pretext.

## CONCLUSION

As demonstrated above and in Walmart's Motion, there are no genuine issues of material fact, and Walmart is entitled to judgment as a matter of law.

Respectfully submitted,

*s/Jonathan A. Beckerman*
Jonathan A. Beckerman
Florida Bar No. 568252
LITTLER MENDELSON, P.C.
*Counsel for Defendant*
333 S.E. 2nd Avenue, Suite 2700
Miami, Florida  33131-2187
Telephone: (305) 400-7500
Facsimile:   (305) 603-2552
E-mail: jabeckerman@littler.com

## CERTIFICATE OF SERVICE

I hereby certify that, on the 14th day of January, 2017, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants: None.

*s/ Jonathan A. Beckerman*
Jonathan A. Beckerman

Firmwide:144668504.1 080000.1141

---

[2] As Nation testified, he erroneously indicated on the termination paperwork that Plaintiff had violated POM 903, which relates to the filling of a prescription for a controlled substance. Nation Dep. at 11:24-12:8, 13:17-14:3.