UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

EVELYN GRADDY,

    Plaintiff,

v.                                               Case No: 5:16-cv-9-Oc-28PRL

WAL-MART STORES EAST, LP,

    Defendant.

## ORDER

This diversity case involves a pharmacist who was fired because she, in cooperation with a law enforcement "sting operation," sold Xanax to a customer who called in a prescription she knew to be false. The pharmacist, Evelyn Graddy, sues her former employer, Wal-Mart Stores East, LP, alleging retaliation under Florida's Private Whistleblower Act (FWA).[1] Wal-Mart filed a motion for summary judgment, (Doc. 24), which is now ripe for consideration. Because Graddy did not engage in activity protected by the FWA, her claim is not actionable and Wal-Mart's motion for summary judgment must be granted.

**I.   Background**

Graddy was employed by Wal-Mart as a pharmacist in various capacities from 1988 until Wal-Mart terminated her employment in 2014. (Graddy Dep., Doc. 25-1, at 35, 52, 85, 92).[2] On November 20, 2014, while Graddy was working in an Ocala-area Wal-Mart,

---

[1] § 448.102(3), Fla. Stat.

[2] The cited page numbers of depositions refer to the page numbers in the deposition transcripts rather than the page numbers of the electronically filed documents.

she became suspicious about the authenticity of a Xanax prescription, prompting her to call the listed "prescribing doctor" to verify the prescription's legitimacy. (Id. at 131–32, 139, 144–45). The doctor's office manager, Carey Robinson, informed Graddy that the prescription was fraudulent and immediately notified the police. (Id. at 146, 148; Robinson Dep., Doc. 25-10, at 16). Robinson spoke with Agent William Christman, a member of the Ocala Police Department's drug enforcement team, who told Robinson that he could not take action until the pharmacist actually filled the prescription. (Robinson Dep. 18–20, 30; Christman Dep., Doc. 25-3, at 4, 14–15). Robinson relayed that information to Graddy and then gave her the doctor's "authorization" to fill the forged prescription by dispensing the medication to the suspected forger. (Robinson Dep. at 30–31). Robinson explained that a police officer would apprehend the forger after Graddy filled the prescription. (Id. at 31–32). Graddy intended to dispense the medication to help law enforcement capture the suspected forger. (Graddy Dep. at 158–59, 161–63, 166–67).

Soon after Graddy and Robinson got off the phone, Agent Christman and another law enforcement officer arrived at Graddy's Wal-Mart. (Christman Dep. at 18–19). They, along with a Wal-Mart asset-protection employee, approached Graddy.[3] (Graddy Dep. at

---

[3] Graddy testified in her deposition that, "the person that's in charge of fraud and detection . . . the head of security, whatever you call them . . . came back to the pharmacy and he was working with the detective." (Graddy Dep. at 153). In her opposition memorandum, Graddy relies on this deposition testimony for the proposition that the manager of the asset protection department, David Reeve, accompanied Agent Christman to the pharmacy to meet with Graddy. (Graddy's Mem. in Opp'n, Doc. 36, at 7). The manager of the asset protection department "monitors or tries to detect internal theft among associates, [and] external theft [among] customers," but has "no jurisdiction over the pharmacy." (Reeve Dep., Doc. 25-9, at 9, 16). In her deposition, Graddy did not specifically name Reeve as the person who accompanied Agent Christman to the pharmacy, and neither Agent Christman nor Reeve recalls whether an asset protection employee first met with Agent Christman and accompanied him to the pharmacy. (Christman Dep. at 20, 48–50, 67; Reeve Dep. at 12–15).

2

153, 156, 226–27). Graddy recalls that Agent Christman explained his need for Graddy to fill the prescription by selling the Xanax to the suspected forger.[4] (Id. at 158–61; Christman Dep. at 21–22, 27). He explained that once the suspect exited the store with the drugs, he would arrest her. (Graddy Dep. at 158–61; Christman Dep. at 21–22, 27). Driven by the fear that she could lose her professional license for failing to comply with Agent Christman's direction, (Graddy Dep. at 159), Graddy agreed to fill the prescription and directed a pharmacy technician to "bag" the Xanax and scan it into the system. (Page Dep., Doc. 25-7, at 16). The suspected forger arrived several hours later, and under Graddy's direction another pharmacy technician sold the Xanax to the forger. (Wise Dep., Doc. 36-1, at 19). After the forger paid for the drugs, she exited Wal-Mart and was immediately stopped and arrested by Agent Christman. (Christman Dep. at 37–38).

During the following days, Wal-Mart's upper-level management conducted an investigation into Graddy's involvement in the sting operation and concluded that Graddy should be discharged for violating Wal-Mart's policy "POM 1703." (Pabon Dep., Doc. 25-6, at 10; Peshek Dep., Doc. 25-8, at 16). "POM 1703" prohibits pharmacists from complying with law enforcement requests to dispense medicine pursuant to fraudulent prescriptions during a sting operation. (Ex. 7 to Graddy Dep., Doc. 25-1, at 95). Wal-Mart's upper-level management directed Graddy's supervisor, Tony Nation, to terminate

---

[4] Graddy testified in her deposition that Agent Christman told her, "I need you to fill the prescription and sell it to her and we will arrest her." (Graddy Dep. at 158). Graddy recalls that she stated in response: "I can't fill a fraudulent prescription . . . that's against the law," and Christman replied, "I know exactly what [the suspected forger] looks like. I will . . . arrest her as soon as she buys the prescription, and you need to fill the prescription." (Id. at 159). Agent Christman, however, said that he never required Graddy to comply with his request, (Christman Dep. at 22), but rather he "*asked* [Graddy] to assist" but did not "*tell* her" to assist. (Id. at 54 (emphasis added)).

3

Graddy's employment. (Nation Dep., Doc. 25-5, at 22–25). Nation prepared an exit interview form that, according to Wal-Mart, erroneously indicated Wal-Mart was terminating Graddy for "violat[ing] the POM 903 for filling a rx that was not written by the DR." (Exit Interview, Doc. 36-2, at 2). Wal-Mart maintains that the form should have reflected that Graddy was terminated for violating POM 1703—that is, for filling a fraudulent prescription in furtherance of a law enforcement sting operation. (See Nation Dep. at 13–14 (stating "I meant to write 1703 on there" and "I wrote the wrong POM on it")).

According to Graddy, during the exit interview Nation reprimanded her for taking part in the sting operation. (Graddy Dep. at 194, 203). Graddy responded by stating that she believed Wal-Mart's enforcement of a policy that prohibits cooperation with police officers was unlawful. (Id. at 202, 232). Immediately thereafter, Nation terminated Graddy as previously directed by Wal-Mart's upper-level management. (Id. at 196).

On November 10, 2015, Graddy filed suit against Wal-Mart under the FWA in state court. (Compl., Doc. 2). Wal-Mart removed the case to this Court on diversity grounds. (Notice of Removal, Doc. 1). The Amended Complaint (Doc. 18) alleges that Wal-Mart retaliated against Graddy for opposing its unlawful policy of preventing pharmacists from dispensing medication pursuant to a fraudulent prescription in cooperation with a sting operation. Wal-Mart filed the instant motion for summary judgment on November 1, 2016. (Doc. 24).

II.  **Summary Judgment Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the Court construes the facts and all reasonable inferences therefrom in the light most favorable to

4

the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). But when faced with a "properly supported motion for summary judgment, [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations." Gargiulo v. G.M. Sales, Inc., 131 F.3d 995, 999 (11th Cir. 1997).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

### III. Analysis

The FWA provides that "[a]n employer may not take any retaliatory personnel action against an employee because the employee has . . . [o]bjected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation." § 448.102(3), Fla. Stat. To prove a prima facie case under this provision, Graddy must establish that: (1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) the adverse employment action was causally linked to the protected activity. Kearns v. Farmer Acquisition Co., 157 So. 3d 458, 462 (Fla. 2d DCA 2015). If Graddy presents a prima facie case, the burden shifts to Wal-Mart to articulate a legitimate non-retaliatory reason for its adverse employment action.[5]

---

[5] The McDonnell-Douglas burden-shifting paradigm that originated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), applies to FWA claims. See Sierminski v. Transouth Fin. Corp., 216 F.3d 945, 950 (11th Cir. 2000).

5

Then, if Wal-Mart meets its burden, the burden shifts back to Graddy to establish that Wal-Mart's articulated reasons are pretextual.

The parties disagree on what standard applies to the first prong of Graddy's FWA claim—that she engaged in statutorily protected conduct. Graddy argues that to meet this test, she must merely show that she had a good faith, objectively reasonable belief that Wal-Mart's policy violated the law, citing Aery v. Wallace Lincoln-Mercury, LLC, 118 So. 3d 904, 916 (Fla. 4th DCA 2013) (adopting the "reasonable belief" standard). Wal-Mart argues for a higher standard, requiring Graddy to show that she objected to an *actual* violation of law or that she refused to participate in activity that would have been an *actual* violation of law, citing Kearns, 157 So. 3d at 465 (rejecting Aery and adopting the "actual violation" standard). The Supreme Court of Florida has not addressed this apparent conflict between Florida's district courts of appeal.[6] Thus, this Court must attempt to apply the law as the Supreme Court of Florida would. JB Oxford Holdings, Inc. v. Net Trade, Inc., 76 F. Supp. 2d 1363, 1366 (S.D. Fla.1999).

Several federal courts have disregarded as dicta the Second District Court of Appeal's conclusion in Kearns that "[a plaintiff] must prove that he objected to an actual violation of law" because the Kearns court concluded that the facts in that case would have satisfied either the "actual violation" standard or "reasonable belief" standard. See Canalejo v. ADG, LLC, No. 8:14-CV-17-T-MAP, 2015 WL 4992000, at *2 (M.D. Fla. Aug. 19, 2015) (denying a motion for reconsideration, reasoning that Kearns' discussion of the standard was dicta and "does not constitute an intervening change in controlling law"); see

---

[6] Only Florida's Second and Fourth District Courts of Appeal have addressed this issue.

also Burns v. Medtronic, Inc., No. 8:15-CV-2330-T17-TBM, 2016 WL 3769369, at *5 (M.D. Fla. July 12, 2016) (declining to follow Kearns, citing Canalejo). Regardless of whether the Second District application of the "actual violation" standard in Kearns was dicta, its rejection of Aery is sufficient to create a conflict in the interpretation of the FWA among Florida's district courts of appeal. Cf. Hawkins v. Williams, 200 So. 2d 800, 801 (Fla. 1967) ("[O]biter dictum [is] sufficient to create conflict in decisions necessary to invoke [the Florida Supreme Court's] jurisdiction." (citing Sunad, Inc. v. City of Sarasota, Fla. 122 So. 2d 611 (Fla. 1960))).

  The conflict is further evidenced by at least one Florida trial court that has applied Kearns' "actual violation" standard even though that court does not sit within the Second District. See Chaudhry v. Adventist Health Sys. Sunbelt Inc., Case No. 48-2014-CA-13278 (Fla. 9th Cir. Ct. Nov. 17, 2016). This is notable because "[t]he decisions of the district courts of appeal represent the law of Florida unless and until they are overruled by [the Florida Supreme Court;] . . . [t]hus, in the absence of interdistrict conflict, district court decisions bind all Florida trial courts." Pardo v. State, 596 So. 2d 665, 666 (Fla. 1992) (alteration in original) (citations omitted). Therefore, absent a conflict between Florida's district courts of appeal, Florida's Ninth Judicial Circuit Court in Chaudhry would have been forced to apply Aery—but it did not. Additionally, the Fourth District has signaled that it may eventually reconsider its language in Aery because the decision "may conflict with the thoughtful analysis in [Kearns]." Usher v. Nipro Diabetes Sys., Inc., 184 So. 3d 1260, 1262 (Fla. 4th DCA 2016) (Gross, J., concurring) (discussing that the standard applied in Aery need not be reconsidered at that time because the plaintiff satisfied the "actual violation" standard).

7

This Court is persuaded that the Supreme Court of Florida would adopt <u>Kearns</u> rather than <u>Aery</u>. See <u>Obukwelu v. Tallahassee Mem'l Healthcare, Inc.</u>, Case No. 4:15-cv-55-MW/CAS, 2015 WL 11110552, at *3 (N.D. Fla. June 25, 2015) (concluding that the Florida Supreme Court would adopt <u>Kearns</u>); <u>Wallace v. Gainesville Hotel Mgmt., LLC</u>, Case No. 1:14-cv-197-MW/GRJ, Doc. No. 39, at 6–7 (N.D. Fla. June 9, 2015) (same). The most persuasive justification for following <u>Kearns</u>' interpretation of the FWA is its plain language. The FWA provides that an employee must show that she "[o]bjected to, or refused to participate in, any activity, policy, or practice of the employer which is *in violation* of a law, rule, or regulation." § 448.102(3), Fla. Stat. (emphasis added). The statute's requirement that an employer's policy be "*in* violation of a law" is unequivocal. It does not provide protection to employees for "alleged" or "suspected" violations of the law.

Comparing the text of the FWA with other Florida whistleblower provisions shows that the Florida Legislature's word choice was intentional. Another subsection of the same statute only provides relief where an employee passes information to a "governmental agency . . . conducting an investigation . . . into an *alleged violation* of a law . . . by the employer." § 448.102(2), Fla. Stat. (emphasis added). Similarly, Florida's whistleblower statute for public employees protects employees who disclose information about "[a]ny violation or *suspected violation* of any federal, state, or local law, rule, or regulation. § 112.3187(5)(a), Fla. Stat. The Florida Legislature has articulated several standards in its whistleblower statutes and "the Legislature should be held to mean what [it] ha[s] plainly expressed." <u>Baker v. State</u>, 636 So. 2d 1342, 1343 (Fla. 1994) (quotation and citation omitted). Because the Supreme Court of Florida is "obliged to give effect to the language

the Legislature has used,'"[7] id. (quotation and citation omitted), the Court is persuaded that it would apply the "actual violation" standard.

The remaining question is whether Wal-Mart's written policy—"POM 1703," which prohibits pharmacists from filling fraudulent prescriptions at the direction of law enforcement—is unlawful. It is not.[8]

Wal-Mart's POM 1703 provides:

> **Knowingly dispensing** a forged or altered prescription **is illegal**. Any request or direction from law enforcement to fill a forged or altered prescription must be refused. Filling a forged or altered prescription even at the direction of law enforcement is not permitted, and law enforcement "sting operations" or similar activities aimed at catching a suspect in the act may threaten the safety of patients and associates. An associate who fills a forged or altered prescription, even at the direction of law enforcement, violates company policy and may be subject to disciplinary action up to and including termination.

(Ex. 7 to Graddy Dep. at 95 (emphasis in original)). Relying on the Aery "reasonably belief" standard, Graddy argues that she reasonably believed that POM 1703 was unlawful.[9]

---

[7] Additionally, although the Supreme Court of Florida has not directly addressed which standard applies, it has described the FWA as prohibiting private sector employers from retaliating against "employees who 'blow the whistle' on employers who *violate* the law or against employees who refuse to participate in *violations* of the law." White v. Purdue Pharma, Inc., 369 F. Supp. 2d 1335, 1337 (M.D. Fla. 2005) (emphasis in original) (quoting Arrow Air, Inc. v. Walsh, 645 So. 2d 422, 423 (Fla. 1994)).

[8] In light of the discussion that follows in the text, even if the "good faith, objectively reasonable belief" standard applied to Graddy's claim, the claim would still fail because it is unreasonable to believe that a policy is unlawful where it simply reinforces a state and federal prohibition on pharmacists dispensing medication pursuant to fraudulent prescriptions.

[9] In doing so, Graddy misquotes the FWA, adding "reasonably believed" language even though none exists in the text of the statute: "Florida's Whistleblower Statute ('FWA'), at subsections 448.102 (3), specifically provides that it is illegal for Wal-Mart to 'take any retaliatory personnel action against' Plaintiff because she [o]bjected to, or refused to participate in, any activity, policy, or practice of [Wal-Mart] *which she reasonably believes* is a violation of a law, rule, or regulation.'" (Graddy's Mem. in Opp'n, Doc. 36, at 4

9

However, she also argues that POM 1703 is *actually* unlawful, asserting that POM 1703 is "in direct conflict" with section 843.06, Florida Statutes, which states in relevant part:

> Whoever, being required in the name of the state by any . . . police officer. . . neglects or refuses to assist him or her in the execution of his or her office in a criminal case, or in the preservation of the peace, or the apprehending or securing of any person for a breach of the peace, or in case of the rescue or escape of a person arrested upon civil process, shall be guilty of a misdemeanor of the second degree, punishable as provided in § 775.082 or § 775.083.

But this argument is not persuasive.

Although superficially there is tension between POM 1703 and section 843.06—the former prohibits cooperation with the police while the latter penalizes for a failure to do so—Graddy's logic does not stand up to scrutiny. POM 1703 simply echoes state and federal laws that prohibit pharmacists from knowingly dispensing medications pursuant to fraudulent prescriptions. See § 893.04(f), Fla. Stat. ("A pharmacist may not knowingly dispense a prescription that has been forged for a controlled substance listed in Schedule II, Schedule III, or Schedule IV."); 21 C.F.R. § 1306.04 ("An order purporting to be a prescription issued not in the usual course of professional treatment or in legitimate and authorized research is not a prescription within the meaning and intent of section 309 of the Act (21 U.S.C. [§] 829) and the person knowingly filling such a purported prescription, as well as the person issuing it, shall be subject to the penalties provided for violations of the provisions of law relating to controlled substances."). Wal-Mart's POM 1703 does not require its employees to violate the law; rather, it simply reiterates to employees that they must follow state and federal law by not dispensing medications pursuant to fraudulent

---

(alteration in original) (original emphasis omitted and new emphasis added). The text of the statute has been accurately set forth earlier in the text of this Order.

prescriptions under any circumstance.[10] If it were determined that POM 1703 required Graddy to participate in a policy that is in violation of a law, all other laws that prohibit pharmacists from knowingly filling fraudulent prescriptions would be directly in conflict with § 843.06.[11] This cannot be the case.

Graddy's case is sympathetic. She was a long-tenured Wal-Mart employee, and she was sincere in her belief that she should assist law enforcement. But POM 1703 is not a policy that is in violation of the law. Because Graddy cannot establish that she participated in protected activity under the FWA, she fails to establish a prima facie case.

---

[10] Wal-Mart points out a possible "safe harbor" provision under section 893.13(9)(h), Florida Statutes, which permits a pharmacist to dispense medications to a law enforcement officer for medical or scientific purposes only, but Graddy does not argue that it applies here. Graddy does argue, however, that she did not violate section 893.04(f)—the Florida statute prohibiting pharmacists from dispensing forged prescriptions—because she did not "dispense" the medication as that term is defined in the statute. See § 893.02(7), Fla. Stat. ("'Dispense' means the transfer of possession of one or more doses of a medicinal drug by a pharmacist . . . to the ultimate consumer . . . or one who represents that it is . . . her intention not to consume . . . but to transfer . . . to the ultimate consumer . . . for consumption by the ultimate consumer or user.").

Graddy argues that because she knew that the suspected forger would be apprehended by law enforcement before she was able to consume the medication, Graddy did not "dispense" the medication. Graddy provides no authority for this interpretation of the statute, and it raises a second concern: if Graddy did not "dispense" the medication to the ultimate consumer for consumption, was she acting "in good faith" and "in the course of professional practice" as required by pharmacists in section 893.04(1), Florida Statutes? (See § 893.04(1), Fla. Stat. ("A pharmacist, *in good faith and in the course of professional practice only*, may dispense controlled substances upon a written or oral prescription of a practitioner, under the following conditions . . .") (emphasis added)). Nonetheless, whether Graddy actually violated section 393.04(f) is not determinative of whether Wal-Mart's POM 1703 is unlawful.

[11] Applying Graddy's argument to its logical extension magnifies its flaws. Under Graddy's analysis, every policy of an employer that requires its employees to comply with state law would require an employee to "participate in [a] . . . policy . . . of the employer that is in violation of a law" because a law enforcement officer could eventually direct an employee to violate that law "to assist him or her in the execution of his or her office in a criminal case."

IV. **Conclusion**

It is **ORDERED** as follows:

1. Wal-Mart Stores East, LP's Motion for Summary Judgment (Doc. 24) is **GRANTED**.

2. All other pending motions are **DENIED as moot**.

3. The Clerk is **DIRECTED** to enter judgment providing that Evelyn Graddy take nothing on her claim against Wal-Mart Stores East, LP.

4. The Clerk is **DIRECTED** to thereafter close this case.

**DONE** and **ORDERED** in Orlando, Florida, on February 14, 2017.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record
Unrepresented Parties